IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>KEVIN MICHAEL WILLIS, )<br>)<br>Defendant. ) | Case No. 3:10CR186–HEH |

## MEMORANDUM OPINION
**(Denying Defendant's Motion to Suppress)**

This case is before the Court on Defendant's Motion to Suppress, filed on August 12, 2010. Both parties filed memoranda supporting their respective positions. A suppression hearing was held on September 10, 2010. For the reasons stated on the record at oral argument and discussed below, Defendant's Motion will be denied.

### I. BACKGROUND

On January 14, 2010, officers of the Richmond City Police Department Focus Mission Team conducted a narcotics sweep at the Fair Hills Apartment Complex—a notoriously high-crime area. During the sweep, Officer Jon Bridges ("Bridges") spotted Defendant Kevin Willis ("Defendant" a/k/a "Speedo") on a second-story landing about twenty-five feet away.

Bridges recognized Defendant immediately. Bridges had interacted with Defendant at least a dozen times in the past four years, and had in fact arrested Defendant on two prior occasions. Additionally, Bridges testified that had been keeping an eye out

for Defendant for several weeks, knowing that he was wanted on several outstanding warrants.

As Defendant looked in Bridge's direction, Bridges called out something to the effect of, "Speedo, I need to talk to you." Defendant turned and ran ten to fifteen feet into apartment 1300-F. Bridges neither knew who lived in 1300-F, nor did he associate that apartment with Defendant.

With Defendant behind closed doors, Bridges confirmed the existence of outstanding warrants for Defendant's arrest. Defendant was wanted on one felony and three misdemeanor warrants.[1] Additionally, information Bridges had obtained through at least a half-dozen prior debriefings of arrestees revealed that Defendant dealt narcotics in the Fair Hills area.[2] Oftentimes, Defendant was described as "unstable." Reports indicated that Defendant possessed a firearm on at least one occasion.

Armed with this information, Bridges approached the apartment. Bridges repeatedly knocked on the door and told Defendant to open the door. Other officers proceeded to the rear of the apartment to prevent Defendant from escaping out of the back entrance. After a few minutes, Defendant responded, "I'm coming." Another minute passed with no sign of Defendant. Officers—concerned for the safety of

---

[1] Specifically, Defendant was wanted for a violation of the terms of his probation following a conviction for Possession with Intent to Distribute Cocaine, a felony, and on misdemeanor warrants for Failure to Pay Child Support, Trespass, and Failure to Appear.

[2] In his affidavit supporting the search warrant for apartment 1300-F (discussed *infra*), Bridges indicated that he received information concerning Defendant's narcotics dealing at least three times in the past twelve months. At the suppression hearing, Bridges clarified that he is "very conservative" in his warrant-affidavit estimates, and he recalled at least a half-dozen debriefings implicating Defendant in the past three years.

themselves and others in the apartment and fearful of destruction of evidence—prepared for forcible entry.

Officers delayed entry until they could secure a ballistics shield. Upon entry, officers apprehended Defendant in the kitchen and placed him under arrest. Incident to that arrest, officers conducted a protective sweep to secure the apartment. In the living room, officers found two women, including leaseholder Latoya Burton ("Burton"), and three children. Officers found no additional persons in the apartment.

Officers did, however, see marijuana in plain view in a clothes hamper approximately five feet from where they apprehended Defendant. Police asked Burton for consent to search the apartment. Because Burton seemed hesitant, officers obtained a search warrant for the apartment based on what they had observed in plain view.

Upon execution of the warrant, police recovered approximately sixteen "nickelbags" of marijuana from the hamper. Police also recovered sandwich baggies and two digital scales from the back room,[3] as well as a 9 mm semi-automatic pistol and ammunition. Defendant waived his *Miranda* rights and admitted ownership of the firearm and marijuana.

Defendant was charged with Possession of Firearm by Felon, in violation of 18 U.S.C. § 922(g)(1), and Possession of Marijuana, in violation of 21 U.S.C. § 844. Defendant filed this Motion to Suppress, arguing that officers' initial entry into the apartment violated his Fourth Amendment rights. In Defendant's view, because police had only a warrant for his arrest—with no accompanying search warrant for Burton's

---

[3] Bridges testified that sandwich bags are commonly used drug paraphernalia.

3

apartment—the police needed both (1) reason to believe he was in the apartment, and (2) reason to believe he resided there. This Court disagrees.

## II. ANALYSIS

The Fourth Amendment draws a firm line at the entrance to the home. *Payton v. New York*, 445 U.S. 573, 590, 100 S. Ct. 1371, 1382 (1980). "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.*

Where, however, police have an arrest warrant founded on probable cause, that warrant "carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at 603, 100 S. Ct. at 1388. Indeed, when a warrant authorizes the arrest of a suspect, "it is constitutionally reasonable to require him to open his doors to the officers of the law." *Id.*

In this case, police had a warrant for Defendant's arrest. There is no question that, under *Payton*, officers would have had the authority to enter Defendant's dwelling to execute the arrest. However, as Defendant emphasized at oral argument, Defendant did not reside in apartment 1300-F. The issue is whether law enforcement's entry into a third party's residence to execute an arrest warrant violated the Fourth Amendment rights of the named arrestee.

Defendant contends that, because police did not have a search warrant for Burton's apartment, police needed (1) a warrant for Defendant's arrest; (2) reason to believe he was in the apartment; and (3) reason to believe he resided therein. (Def.'s Mot. 3.)

4

Defendant attributes this line of reasoning to the combined teachings of *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371 (1980), and *Steagald v. United States*, 451 U.S. 204, 101 S. Ct. 1642 (1981). In support of his position, Defendant cites to *United States v. Young*, 609 F.3d 348 (4th Cir. 2010); *Valdez v. McPheters*, 172 F.3d 1220 (10th Cir. 1999); *United States v. Lauter*, 57 F.3d 212 (2d Cir. 1995); *United States v. Magluta*, 44 F.3d 1530 (11th Cir. 1995); *Wallace v. King*, 626 F.2d 1157, 1161 (4th Cir. 1980); *Solis-Alarcon v. United States*, 514 F. Supp. 2d 185 (D.P.R. 2007); *Rich v. United States*, 158 F. Supp. 2d 619 (D. Md. 2001); *Smith v. Tolley*, 960 F. Supp. 977 (E.D. Va. 1997); and *People v. Aarness*, 150 P.3d 1271 (Colo. 2006).

Defendant's reliance on these cases is misguided. Each of the cases cited by Defendant involved constitutional claims by homeowners whose residences were searched by officers who possessed a warrant for the arrest of another person, *see Valdez*, 172 F.3d at 1222; *Wallace*, 626 F.2d at 1158–59; *Solis-Alarcon*, 514 F. Supp. 2d at 192–93; *Rich*, 158 F. Supp. 2d at 623, 627; *Tolley*, 960 F. Supp. at 980 n.1, 984,[4] or challenges by named arrestees whose dwellings were entered to effectuate their arrest, *see Young*, 609 F.3d at 352; *Lauter*, 57 F.3d at 213; *Magluta*, 44 F.3d at 1532; *Aarness*, 150 P.3d at

---

[4] *Tolley* is somewhat unique in that officers attempted to serve an arrest warrant for Linda Smith at the residence of Linda and her husband Booth. 960 F. Supp. at 981. Booth asserted a Section 1983 claim against officer Tolley, alleging that Tolley violated his Fourth Amendment rights because Tolley did not have reason to believe Linda was present in the home when they entered to effectuate the arrest. *Id.* at 980 n.1, 985. Although the court stated that *Steagald* required officers to have reason to believe the named arrestee resided in the home searched, *id.* at 984 n.10, the court ultimately found that no Fourth Amendment violation had occurred, *id.* at 992.

In any event, the distinguishing fact remains: the Fourth Amendment challenge in *Tolley* was brought *by the homeowner*. In this case, it is not the homeowner but the arrestee who challenges the entry.

5

1273. In this case, however, a named arrestee challenges the search of a third party's residence.

In the immediate case, the Defendant appears to overlook a key element of the holdings *Payton* and *Steagald*—namely, that the Fourth Amendment protects the rights *of persons who resided in the dwelling searched*.[5] Defendant ignores the fact that *Steagald* concerned "the Fourth Amendment interests of *persons not named in the warrant*[] when their homes are searched without their consent and in the absence of exigent circumstances," 451 U.S. at 212, 101 S. Ct. at 1648 (emphasis added); *see also United States v. Gray*, 491 F.3d 138, 145–46 (4th Cir. 2007).

When officers enter a third party's residence for the purpose of executing an arrest warrant, two distinct Fourth Amendment interests are implicated: (1) the target named in the arrest warrant has "an interest in being free from an unreasonable seizure"; and (2) the third-party homeowner has an "interest in being free from an unreasonable search of his home." *Steagald*, 451 U.S. at 216, 101 S. Ct. at 1649–50. This case involves only the former.

Although *Steagald* would have required a search warrant to protect leaseholder Burton's Fourth Amendment rights, Burton's privacy interests are not in issue. *See*

---

[5] In *Payton*, the Court addressed whether the Fourth Amendment permitted a warrantless home arrest. *See Payton*, 445 U.S. at 574, 100 S. Ct. at 1374. The Court held that police need a warrant or probable cause plus exigent circumstances to enter the arrestee's home. *See id.* at 590, 100 S. Ct. at 1382.
 The *Steagald* Court considered whether an arrest warrant, standing alone, authorized entry into a third party's residence. 451 U.S. at 205, 101 S. Ct. at 1644. The Court held that, absent exigent circumstances or consent, a search warrant was required to adequately protect the Fourth Amendment rights of the third-party homeowner. *Id.*

*Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S. Ct. 421, 425 (1978) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.").[6]

In short, *Payton* controls this case. "As *Payton* makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S. Ct. 2458, 2459 (2002). Officers here had a warrant for Defendant's arrest when they entered Burton's apartment.

Because an individual's privacy expectations are greatest in his own home, *Gray*, 491 F.3d at 145, "[i]t would be illogical to afford the defendant any greater protection in the home of a third party," *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006) (citation omitted). "That illogical result, however, is precisely what would happen if we accepted the defendant's contention that *Steagald* required a search warrant in this case." *United States v. Buckner*, 717 F.2d 297, 300 (6th Cir. 1983). A search warrant is not necessary to execute an arrest warrant on the premises of a third party when officers reasonably believe that the suspect is on the premises. *Pruitt*, 458 F.3d at 482.

---

[6] In a related vein, as this Court noted at oral argument, Defendant failed to present any evidence establishing standing. "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas*, 439 U.S. at 130 n.1, 99 S. Ct. at 424 n.1; *see also United States v. Buckner*, 717 F.2d 297, 299–300 (6th Cir. 1983) ("[W]here the defendant is arrested in the home of a third party and is challenging the search of that home, the courts should first focus on the issue of standing. In the usual case, the defendant will not have had a legitimate expectation of privacy in the premises which were searched and therefore will be unable to challenge the search. The fact that the entry may have violated the constitutional rights of the third party homeowner would have no effect on the defendant's criminal conviction.").

The evidence in this case showed only that Defendant had been living with Burton in apartment 1300-F until roughly Thanksgiving; the instant search, however, occurred months later, and Defendant himself emphasized that he did not live in the apartment. In any event, the United States did not raise the issue of standing, and this Court's holding does not rise or fall on that issue.

Because the arrest warrant authorized the entry, the Court need not reach the government's argument that exigent circumstances justified the entry.[7]

### III. CONCLUSION

For the reasons stated above, the defendant's Motion to Suppress will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Sep7 25, 2010
Richmond, VA

---

[7] The government argued in its Response to Defendant's Motion to Suppress that the entry was justified under the exigent circumstances exception to the warrant requirement. Although the Court need not reach that issue, the Court notes that the evidence adduced at the suppression hearing demonstrated the exigencies of the situation in far more detail than the facts presented in the government's Response. The evidence at the hearing established that (1) Defendant was known to deal narcotics in the Fair Hills area; (2) Defendant had frequently been described to Bridges as "unstable"; (3) the Fair Hills apartment complex is a high-crime area; (4) Bridges knew there existed an outstanding felony arrest warrant and several misdemeanor warrants for Defendant's arrest; (5) Defendant fled upon seeing Bridges and disregarded Bridges' verbal command; (6) Bridges had information indicating that Defendant carried a gun in connection with his drug-dealing on at least one prior occasion; (7) Bridges did not know to whom the apartment belonged or who was inside; (8) when officers banged on the door, Defendant stated that he would exit the apartment, but failed to do so; and (9) officers were so concerned for the safety of themselves and others that they delayed entry until they could secure a ballistics shield.